UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:14-00090 |
| | ) | JUDGE CAMPBELL |
| JAMAL COOPER | ) | |

MEMORANDUM AND ORDER

I. Introduction

By Order entered June 28, 2016 (Docket No. 1160), the Court granted the Defendant's

request to reopen the evidentiary hearing held on August 18, 2015, requesting suppression of

evidence and statements. (Docket Nos. 743, 998). The Court held a hearing on August 10, 2016

during which the parties offered additional evidence. The Defendant has filed a post-hearing

brief (Docket No. 1179), and the Government has filed a notice of intent to rest on the record.

(Docket No. 1180). For the reasons set forth herein, the Defendant's renewed request to suppress

evidence and statements is DENIED.

II. Factual and Procedural Background

At the conclusion of the previous hearing, the Court found as follows regarding

suppression of the Defendant's statements:

> The second issue relates to Miranda and whether Mr. Cooper invoked his right
> to counsel. The facts reflect that Agent Chance advised Mr. Cooper of his
> Miranda rights and that he never at any time invoked his right to a lawyer. At one
> point he quit cooperating and speaking, and that was at the DEA office where he
> said words to the effect 'Just go ahead and take me to jail.' And that's in response
> to a request to search his telephone and some questions regarding family
> members, according to the testimony. And at that point the DEA agents at the
> DEA office and other personnel ceased asking questions.
>
> There is another fact that needs to be addressed, which is whether Ms. Key, the
> defendant's mother, made a particular type of statement at her home relating to
> the defendant needing a lawyer. There are various iterations related to the parties'

inferences of this. One is a declaratory statement, you need a lawyer. Another characterization is more in the nature of a question, do you need a lawyer?

In that particular circumstance, no matter how that is characterized, Ms. Key doesn't have standing to invoke the right to counsel for Mr. Cooper. Mr. Cooper needs to do that. And all the testimony is he continued to speak to agents and never invoked his right to counsel. So to that point there's been no Miranda violation or right to counsel being invoked.

Due to the way the facts developed today, there's a new issue presented about whether the agents should have again warned Mr. Cooper of his right to counsel after that exchange with Ms. Key, and the parties have a dispute about that. The government essentially takes the position it's one continuous episode, and one advice of counsel under Miranda is sufficient. Defendant Cooper takes the position, essentially, that there should have been readvising of rights in light of the statements made by Ms. Key.

The Court's view of this is that there were a continuous episode of conversations between Mr. Cooper and agents. It was at four different locations, the stop, the parking area, the house, and then the DEA office. There's no question Mr. Cooper received Miranda warnings prior to the conversation at the house, and there's no question he received Miranda warnings at the DEA office. So there were at least two instances of Miranda warnings.

The pivotal point would be whether he needed to be again advised of his rights at the home, and the Court finds it was sufficiently unbroken and contemporaneous, that he knew what his rights were, and, according to the testimony, he said he had it under control or words to that effect and continued to speak at the home and was, in fact, readvised of his rights at the DEA office.

So I'm going to deny the motion to suppress for those reasons. . .

(Docket No. 998, at 60-62).

At the hearing held on August 10, 2016, the Defendant called two witnesses: Wanda Key and Jayla Jenkins. Wanda Key,[1] the mother of the Defendant, testified that she was at her home on May 18, 2014 when officers brought her son there and conducted a search of her residence

---

[1] Ms. Key invoked her Fifth Amendment rights and declined to testify at the previous hearing. (Docket No. 998, at 53-54).

after she gave permission. Ms. Key testified that the Defendant was in handcuffs at that time, and that there were approximately 20 officers at her home. Ms. Key testified that she heard the Defendant say that he needed an attorney: "Amid all the chaos, he eventually said, I need an attorney." According to Ms. Key, the Defendant made this statement in a "normal" voice, within five feet of her, and in the presence of several officers. Ms. Key also testified that the "lead officer" told the Defendant that he did not need an attorney. Ms. Key was not sure if the lead officer was Agent Matthew Chance.

Ms. Jenkins testified that the Defendant's brother, Karon Jordan, is the father of her son. According to Ms. Jenkins, the Defendant and officers were present at Ms. Key's house on May 18, 2014 when she arrived there. Ms. Jenkins testified that while she was standing in the den and the Defendant was standing in the kitchen, she heard him say that he wanted a lawyer because he did not want his brother to be in trouble. Ms. Jenkins testified that she could not see the Defendant when he made the statement, but she could hear him. According to Ms. Jenkins, the Defendant made the statement in a "medium, normal" voice tone while she was 15 or so steps away from him. Ms. Jenkins testified that she did not know the names of the officers who were with the Defendant at this time.

In rebuttal, the Government recalled Special Agent Matthew Chance of the Drug Enforcement Agency. Agent Chance testified that he was at Ms. Key's residence on May 18, 2014, but he did not tell Ms. Key that the Defendant did not need an attorney. According to Agent Chance, while they were all standing in the kitchen area, Ms. Key told the Defendant that he needed a lawyer, then the Defendant "acknowledged it [the statement], and we continued

3

talking." Agent Chance testified that he was with the Defendant most of the time the Defendant

was at the residence and did not hear anyone else tell the Defendant he did not need an attorney.

Agent Chance further testified that if the Defendant had requested an attorney, they

would have stopped talking with him and would have taken him to jail. Agent Chance stated

that, at a later time, the Defendant indicated that he did not want to talk anymore, and they took

him to the Davidson County Sheriff's Department.

### III.  Analysis

The Fifth Amendment provides that an individual cannot be "compelled in any criminal

case to be a witness against himself." To protect that right, the Supreme Court held in Miranda v.

Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) that suspects subject to custodial

interrogation must be given notice of their Fifth Amendment right against self-incrimination,

their right to counsel, and other rights. Once a suspect in custody has asked for a lawyer, he may

not be subject to further interrogation until a lawyer has been provided or unless the suspect

initiates a discussion. See, e.g., Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d

378 (1981).  If the suspect makes an ambiguous or equivocal reference to counsel, however,

cessation of questioning is not required. See, e.g., Davis v. United States, 512 U.S. 452, 114

S.Ct. 2350, 129 L.Ed.2d 362 (1994). The inquiry is an objective one – whether a reasonable

officer in light of the circumstances would have understood the defendant to be requesting an

attorney. 114 S.Ct. at 2355.

The Supreme Court has held that the statement "Maybe I should talk to a lawyer" was not

an unequivocal request for counsel. Id.  The Sixth Circuit has recently held that the following

statements did not constitute an unequivocal request for counsel:

| | |
|---|---|
| Detective Hodshire: | So, you know why I'm here to talk to you, right? |
| James McKinney: | Yeah, Yeah. |
| Hodshire: | So, I'm here to get your side of the story of what happened and why. Okay. When we do investigations, we understand that things happen for certain reasons and some of those reasons we don't understand . . . so that's why I wanted to talk with you today to get your side of the story of what happened. |
| McKinney: | Well if you don't mind, I just assume wait until I get a public defender or whatever.[1] |
| Hodshire: | Well, that's fine, but like I said. . . |
| McKinney: | We can talk over all the other circumstances. |

       [1]  We read this as 'Well if you don't mind, I'd just as soon wait until I get a public defender or whatever. . .

McKinney v. Hoffner, ___ F.3d ___, 2016 WL 3902645 (6th Cir. July 19, 2016).

In addition to showing that his request for counsel was unequivocal, a defendant must show that his request for counsel was actually heard and ignored by officers, and that the statements he seeks to suppress were made in response to their subsequent interrogation. See, e.g., Hyatt v. Branker, 569 F.3d 162, 169-170 (4th Cir. 2009)(Officers did not hear defendant's statement, made to his father prior to custodial interrogation, that he wanted an attorney); United States v. Scott, 553 Fed. Appx. 555 (6th Cir. Jan. 29, 2014)(Defendant's statements were admissible as they were made when he initiated further communication with the police, rather than in response to continued interrogation, after invoking his right to counsel).

In this case, at the previous hearing, both Special Agent Warren Smith and Special Agent Matthew Chance testified that the Defendant did not invoke his right to counsel at any time. (Docket No. 998, at 16-18, 26-28, 43-44, 46, 48-49). According to these witnesses, the

Defendant acknowledged his mother's suggestion that he may need a lawyer, but stated that, in essence, he had the situation under control. (Id.) Special Agent Smith testified that at some point while they were at her house, Ms. Key asked if he thought the Defendant needed a lawyer, and he told her that he could not offer advice on that. (Id., at 26).

On the other hand, Ms. Key testified that "amid all the chaos," the Defendant eventually said he needed a lawyer. But Ms. Key did not specify precisely when the Defendant made this statement or to whom it was made. She did not offer any testimony as to whether the officers then continued to question the Defendant, or whether the Defendant re-initiated the conversation himself.  For her part, Ms. Jenkins testified that the Defendant said he needed a lawyer to keep his brother from getting into trouble, but she could not see the Defendant or the officers that were with him at the time he made the statement. In addition, she too failed to offer testimony about whether the officers thereafter continued to question the Defendant, or whether the Defendant re-initiated the conversation. The Defendant offered no testimony at all on the issue.

Under these circumstances, the evidence does not establish that the statements the Defendant seeks to suppress were made in response to interrogation by officers who heard and ignored his unequivocal request for counsel. According to the testimony and evidence adduced at the hearings, the Defendant spoke at length and in some detail for some period of time at his mother's house and at the DEA office before he indicated to officers that he did not wish to continue, presumably because the officers began to ask about his close friends and family members, and for consent to search his phone. (Id., at 17, 45; Docket No. 514-1). The Defendant clearly was not so intimidated that he could not end the interview when he desired to do so, and it is reasonable to assume that, had he actually invoked his right to counsel at his mother's house,

he would have made that clear and persisted in that request and refused to answer further

inquiries.[2]

Based on the Defendant's behavior and all the other evidence adduced in this case, the

Court is not persuaded that the Defendant's statements were made in response to continued

questioning after he clearly and unequivocally invoked his right to counsel.[3] Accordingly, the

Defendant's renewed request to suppress his statements is DENIED.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

[2] The Court is aware that an accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of the initial request for counsel. Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). However, as in McKinney, supra, at *7-8, this holding does not apply in determining whether the Defendant actually made an unambiguous request for counsel and whether his statements were actually in response to further interrogation.

[3] The Defendant's brief urges the Court not to make its decision based on the race, gender, and/or positions of the parties and witnesses involved. As in all cases that have come before this Court, the conclusions reached in this case were based on the evidence adduced by the parties and the applicable law.